**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 1:13-cv-00951-REB-BNB

SARAH M. HICKEY,
AMY M. GULDEN, and,
JAY A. RAGSDALE,
on behalf of themselves, individually, and on behalf of all others similarly situated,

      Plaintiffs,

v.

BRINKER INTERNATIONAL PAYROLL COMPANY, L.P.,

      Defendant.

---

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

---

**Blackburn, J.**

    The matter before me is the **Defendant's Motion To Compel Arbitration of Individual Claims and Dismiss Class Action Claims, Collective Action Claims and Other Proceedings** [#22],[1] filed August 12, 2013.  The issues implicated by the motion are fully briefed, and oral argument would not aid in their resolution.  I grant the motion and dismiss this action.

## I. JURISDICTION

    I putatively have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

---

[1] "[#22]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

## II.  STANDARD OF REVIEW

The decision whether to enforce an arbitration agreement involves a two-step

inquiry.  First, I must determine whether the parties agreed to arbitrate the dispute.

***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct.

3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir.

2000).  I then must consider whether any statute or policy renders the claims

non-arbitrable. ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764.

## III.  ANALYSIS

Plaintiffs are present and former banquet servers at defendant's Maggiano's

Little Italy Restaurants in Colorado.  Plaintiffs claim defendant has failed to pay them all

tips to which they are entitled and has denied them meal and rest breaks required by

Colorado state law.  They have filed claims under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b), the Colorado Wage Act, §8-4-101 *et seq.*, C.R.S., and the

common law of Colorado.

Defendants have moved to dismiss the class and collective action claims and to

compel arbitration of the individual claims pursuant to two agreements which the named

plaintiffs signed in 2009 and 2012, respectively.  The 2009 agreements provide in

relevant part:

> Because of, among other things, the delay and expense
> which result from the use of the court systems, any legal or
> equitable claims or disputes arising out of or in connection
> with employment, terms and conditions of employment, or
> the termination of employment with [defendant] will be
> resolved by binding arbitration instead of in a court of law or
> equity.  This agreement applies to all disputes involving
> legally protected rights.

2

(**Def. Motion App.**, Exhs. 1-A, 2-A, & 3-A at 1 [#22], filed August 12, 2013.)  In 2012, each of the named plaintiffs executed a second arbitration agreement identical to the 2009 agreement with respect to the agreement to arbitrate, but providing further that the employee "waive[d] the right to commence or be party to any representative, collective, or class action" and that "[t]he arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of representative, collective, or class proceeding."  (**Id.**, Exhs. 1-B, 2-B, & 3-B at 1-2.)  Defendant argues that these agreements are valid and binding and thus preclude plaintiffs from seeking relief on their individual claims other than in arbitration, and on their class and collective claims at all.

Before considering plaintiffs' arguments going to the validity of the arbitration agreements themselves, I must address their suggestion that I should stay determination of this matter pending resolution of charge against defendant before the National Labor Relations Board ("NLRB").  After this lawsuit was filed, plaintiffs filed a charge with the NLRB asserting that the 2012 agreements improperly infringe on their right to engage in concerted activity under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* For this proposition, they rely on the NLRB's decision in ***In re D.R. Horton, Inc.***, 357 NLRB No. 184, 2012 WL 36274 (N.L.R.B. Jan. 3, 2012), in which the NLRB determined that

> an agreement that precludes [employees] from filing joint, class or collective claims addressing their wages, hours or other working conditions against the employer in any forum, arbitral or judicial . . . unlawfully restricts employees' [NLRA] Section 7 right to engage in concerted action for mutual aid or protection, notwithstanding the [FAA], which generally

3

makes employment-related arbitration agreements judicially
enforceable.

*Id.*, 2012 WL 36274 at *1.

Even at the time plaintiffs filed their response to the motion, the decision in *In re D.R. Horton* had been rejected by every court that had considered it. *See Richards v. Ernst & Young, LLP*, – F.3d – , 2013 WL 6405045 at *2 n.3 (9th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297-98 n.8 (2nd Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013).[2]  More importantly, however, the decision now has been overruled outright. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013).[3]  The United States Court of Appeals for the Fifth Circuit concluded that the NLRB had failed to give proper weight to the equally important policies informing the Federal Arbitration Act. *See id.* at 356 ("Deference to the Board cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption . . . of major policy decisions properly made by Congress.") (quoting *NLRB v. Financial Institutional. Employers of America, Local 1182*, 475 U.S. 192, 202, 106 S.Ct. 1007, 1013, 89 L.Ed.2d 151 (1986) (internal quotation marks omitted)).  After thoroughly reviewing the language, history, and overriding purpose of the NLRA, *id.* at 357-62, the court concluded that

---

[2]  Even if *In re D.R. Horton* had not been expressly overruled, at the very least I would find and conclude that this case falls outside of the holding of that decision because it does not preclude an employee from filing a collective claim or charge with a governmental administrative agency, such as the NLRB. *See Owen*, 702 F.3d at 1053-54 (arbitration agreement falls outside parameters of *In re D.R. Horton* where it "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor (which has jurisdiction over FLSA claims, see 29 U.S.C. § 204)" nor prevent "any of these agencies from investigating and, if necessary, filing suit on behalf of a class of employees").

[3]  Which fact plaintiffs' counsel, as officers of the court, failed to bring to my attention themselves.

> [t]he NLRA should not be understood to contain a
> congressional command overriding application of the FAA.
> The burden is with the party opposing arbitration, and here
> the Board has not shown that the NLRA's language,
> legislative history, or purpose support finding the necessary
> congressional command.  Because the Board's interpretation
> does not fall within the FAA's "saving clause," and because
> the NLRA does not contain a congressional command
> exempting the statute from application of the FAA, the
> Mutual Arbitration Agreement must be enforced according to
> its terms.

*Id.* at 362 (internal citation omitted).  Given the recent morbidity of *In re D.R. Horton*, the outcome of plaintiffs' charge before the NLRB thus seems a foregone conclusion.  I perceive no justification for staying my resolution of the matters inherent to the instant motion and proceed to consider plaintiffs' substantive arguments in contravention of arbitration and dismissal.

Plaintiffs argue first that the arbitration agreements are unenforceable because they require plaintiffs to bear the costs of arbitration.  Courts generally agree that placing the cost burden of arbitration on an employee may render an arbitration agreement unenforceable, at least under certain circumstances.  *See Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999).  *See also Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998); *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir.1997).

Nevertheless, there are at least two problems with plaintiffs' arguments.  First, and even assuming *arguendo* that the appropriate standard is as categorical as

5

plaintiffs suggest, the agreements do not contain a cost-splitting provision. The 2012

agreements provide that

> [e]ach party is entitled to representation by an attorney
> throughout the arbitration proceedings at their own expense.
> Each party shall bear their own fees and expenses unless
> otherwise awarded by the arbitrator in a final, written
> decision.

(**Def. Motion App.**, Exhs. 1-B, 2-B, & 3-B.)  Taken in context, this provision plainly

requires each party to bear the costs and expenses of its own legal representation, *not*

the other costs of arbitration.  The agreements are silent as to who should bear these

types of costs, and mere "silence with respect to such matters does not render the

agreement unenforceable."  ***Green Tree Financial Corp. – Alabama v. Randolph***, 531

U.S. 79, 82, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000).

Second, plaintiffs have not sustained their burden to prove that the costs of

arbitration are prohibitive.[4]  ***See id.***, 121 S.Ct. at 522.   In determining whether "the

existence of large arbitration costs could preclude a litigant . . . from effectively

vindicating her federal statutory rights in the arbitral forum," the court must consider

both the employee's personal finances and the actual costs involved.  ***See id.*** at 522 &

n.6.  In their response brief, plaintiffs note that the agreements provide that if the parties

cannot agree on an arbitrator, then one is to be chosen by the American Arbitration

Association.  Purporting to have conducted a survey of local arbitrators, plaintiffs aver

that

The Judicial Arbitrator Group AG requires a $4,000 deposit

---

[4]  Plaintiffs' reliance on the Tenth Circuit's decision in ***Shankle*** for the suggestion that they need
not demonstrate their inability to actually pay the fees is insupportable.

> for every day or arbitration scheduled.  The hourly fee for
> arbitrators is between $330 to $390, which is the joint
> obligation of the parties.  Even AAA arbitrators charge
> between $200 and $400 per hour. Moreover, the filing fee is
> $975. There is a separate administrative fee of $150 that
> each party must pay for each hearing day.  There is also a
> separate charge for room rental.

(**Plf. Resp.** at 6 (footnotes omitted).)[5]

Not only is this assertion based on nothing more than rank hearsay, it is entirely

speculative.  These putative fees will become relevant only if the parties fail to agree to

an arbitrator.[6]  Plaintiffs have offered nothing to suggest that there is no reasonably

priced arbitrator to whom they could agree to resolve this dispute, much less that they

have conferred with defendant to attempt to reach agreement on the matter.  Moreover,

defendant expressly has agreed to pay arbitration costs up to $3.000 for each individual

named plaintiff.  Given these circumstances, I find that the agreements are not invalid

on this basis.

Plaintiffs contend also that the arbitration agreements are illusory because

defendant reserved the right to unilaterally amend them.  ***Dumais v. American Gold***

***Corp.***, 299 F.3d 1216, 1219 (10th Cir. 2002) ("[A]n arbitration agreement allowing one

party the unfettered right to alter the arbitration agreement's existence or its scope is

illusory.").  The facts are to the contrary, however.  Although defendant reserved the

---

[5]  Plaintiffs further assert that "a party making a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration will be subject to the administrative fees of $3,350 for the initial fee and an additional $1,250 incurred when the case goes to a first hearing." This argument, of course, begs the question whether plaintiffs have any right to pursue class or collective action claims in arbitration under the agreements.

[6]  Moreover, as defendant notes, AAA rules require the employer to pay the arbitrator's fees and expenses, the filing fee, the daily administrative fee, and any room rental fee.  (***See* Def. Reply App.**, Exh. A at 24-25 [#40], filed October 7, 2013.)

right to amend or terminate the agreements, its right was not "unfettered," as it could do so only on ten days notice to employees.  Such restrictions on the employer's right to alter the terms of the employment contract are valid and render the agreements non-illusory.  *See Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470, 479 (10th Cir. 2006); *Lumuenemo v. Citigroup, Inc.*, 2009 WL 371901 at *5 (D. Colo. Feb. 12, 2009).

Lastly, plaintiffs maintain that, at the very least, they should be permitted to pursue class and collective action claims arising before the 2012 arbitration agreements were executed because the 2009 agreements did not expressly bar class and collective action claims.  I am unpersuaded.  The mere silence of the 2009 agreements on this issue cannot be read to require defendant to submit to arbitration of class or collective action claims.  *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684, 130 S.Ct. 1758, 1775, 176 L.Ed.2d 605 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.").[7]  Nor can plaintiffs pursue such claims in a

---

[7] As the Court explained,

> An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.  This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.  In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.  But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration.

*Stolt-Nielsen S.A.*, 130 S.Ct. at 1775-76 (internal citations omitted)

judicial forum, as plaintiffs manifested their acceptance of the modifications enacted in the 2012 agreements by continuing their employment with knowledge of the modification. *See Frymire v. Ampex Corp.*, 61 F.3d 757, 769-70 (10th Cir. 1995), *cert. dismissed*, 116 S.Ct. 1588 (1996).[8]  The 2012 agreements therefore superseded the 2009 agreements and are controlling here.

I therefore find that the arbitration agreements are not invalid.  Plaintiffs do not argue that their claims in this lawsuit do not fall within the exceedingly broad scope of the arbitration provision contained therein, nor could they.  (*See Def. Motion App.*, Exh. 1-B, 2-B, & 3-B at 1 [#22], filed August 12, 2013 (providing agreement to arbitrate "any legal or equitable claims or disputes arising out of or in connection with the employment, terms and condition of employment, or the termination of employment.").)  The motion to compel arbitration of the individual claims thus should be granted, as should the motion to dismiss the putative class and collective action claims.

Defendant asks that I dismiss this action entirely, rather than simply issue a stay. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . .").  Despite the seemingly mandatory language of section 3, the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable.  *See, e.g.*, *Choice Hotels International,*

---

[8]  Plaintiffs' notations on the 2012 agreements that they were required to sign as a condition of continued employment thus is unavailing and merely reaffirms their legal position in light of their decision to continue working with knowledge of the proposed alteration in the terms of their employment.

*Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 151, 156 & n.21 (1st Cir. 1998); *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Black and Veatch International Co. v. Wartsila NSD North America, Inc.*, 1998 WL 953966 at *4 (D. Kan. Dec. 17, 1998).  *But see Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269-71 (3rd Cir. 2004).  Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay.  *See Armijo v. Prudential Insurance Co. v. America*, 72 F.3d 793, 796-97 (10th Cir. 1995).  These two prerequisites for dismissal are satisfied here.  I therefore concur that dismissal of this case is proper.

　　　**THEREFORE, IT IS ORDERED** as follows:

　　　1.  That **Defendant's Motion To Compel Arbitration of Individual Claims and Dismiss Class Action Claims, Collective Action Claims and Other Proceedings** [#22], filed August 12, 2013, is **GRANTED**;

　　　2.  That plaintiffs' putative class and collective action claims are **DISMISSED WITH PREJUDICE**;

　　　3.  That the parties are **ORDERED** to proceed to arbitration of plaintiffs' individual claims;

　　　4.  That all pending pretrial deadlines, the combined Final Pretrial Conference and Trial Preparation Conference set Friday, May 16, 2014, at 1:30 p.m., and the trial

set to commence Monday, June 9, 2014, are **VACATED**;

     5.  That all pending motions are **DENIED AS MOOT**; and

     6.  That this case is **CLOSED**

Dated February 18, 2014, at Denver, Colorado.

                        **BY THE COURT:**

Robert E. Blackburn
United States District Judge